[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
NATURE OF PROCEEDINGS AND STATEMENT OF FACTS
The statement of facts and the proceeding before the court in the instant appeal are relatively simple. The facts and proceedings which preceded the appeal, some of which are necessary to an understanding of the matter, are far from simple.
On or about March 16, 1992, The Crossroads at Cheshire Associates Limited Partnership submitted a petition to the Planning and Zoning Commission of the Town of Cheshire to amend certain sections of the zoning regulations. A public hearing was scheduled by the Commission to be held on the petition on May 11, 1992. On May 4, 1992, the Commission received a request from Crossroads that the commencement of the hearing on its petition be postponed and/or extended to June 23, 1992. On June 22, 1992, a public hearing was held on the Crossroads' petition. The hearing was continued until June 29, 1992, July 20, 1992 and concluded on July 21, 1992.
Notice of the public hearing was published in the Cheshire Herald on April 30, 1992 and May 7, 1992. At a meeting held by the Commission on September 21, 1992 the Commission, by unanimous vote, denied Crossroads' petition to the zone change. Notice of the denial was published in the Meriden Record Journal on September 26 and in the Cheshire Herald on October 1, 1992. On October 8, 1992 Crossroads appealed the decision denying its request for a zone change to the Superior Court for the judicial district of New Haven.
Some additional background is necessary, or at least helpful, CT Page 1880 to an understanding of the present dispute. On May 23, 1985, the zoning regulations for an interchange zone were adopted by the Town of Cheshire. Those regulations, in § 48.2, included numerous uses, one of which was "regional shopping centers." Shortly after the adoption of the regulations the Cheshire Planning and Zoning Commission approved a special permit application for John Errichetti Associates to construct a 925,000 square foot regional shopping center in the northwest quadrant of the interchange zone. In January of 1986, the present plaintiff purchased 61.1 acres in the southeast quadrant of the interchange zone. At the time of the purchase the plaintiff could have constructed, upon the obtaining of the appropriate permits, a regional shopping center of not less than 250,000 square feet. In May of 1986, the plaintiff received permission to build a 120,000 square foot office building on his property. Eventually the plaintiff concluded that the office building complex was not economically viable. During the time that the plaintiff was attempting to develop its office building, the shopping center which had been approved for Mr. Errichetti was making little progress. Errichetti had obtained his special permit in November of 1985 and through various votes of the Commission had extended the permit first annually and then for a five year period. In March of 1989, the plaintiff presented a preliminary proposal for a regional shopping center containing 360,000 square feet of leasable space. At that point in time this was a permitted use in the interchange zone. Following the preliminary presentation in April of 1989, the Planning and Zoning Commission proposed an amendment to the interchange zone, the net effect of which was to allow only one shopping center at the interchange.
Since Errichetti already had a special permit to build a shopping center, the plaintiff was foreclosed from its proposal to build a shopping center following the amendment of the zoning regulations to provide for a single regional shopping center in the interchange zone. In response to this foreclosure, on May 16, 1992, the plaintiff filed an application to amend the interchange regulations to remove the limitation allowing only one regional shopping center in the zone. The denial of that request for zone change is the matter which is the subject of the present appeal.
DISCUSSION
1. CLAIM AGAINST THE TOWN OF CHESHIRE
The plaintiff makes numerous claims against the Town of Cheshire. The plaintiff named the Town of Cheshire as a defendant CT Page 1881 in its citation. The plaintiff claims that certain actions of the Town should be the basis for invalidating the denial of its zone change. Nevertheless, the plaintiff has brought what appears to be an appeal from the denial of the zone change by the Planning and Zoning Commission. While the plaintiff pleads numerous actions of the Town as subcategories of the illegal or arbitrary actions alleged on the part of the Commission, no direct allegations against the Town are made and no relief is sought other than relief which would accompany a land use administrative appeal. The court finds that the complaint fails to state a claim upon which relief can be granted against the Town of Cheshire. Although a defense that the complaint fails to state a claim upon which relief call be granted is normally raised by a motion to strike, Practice Book § 152, the failure to file a motion to strike does not waive the defendant's rights to attack the legal sufficiency of the pleading at trial. Robert S. Weiss and Associates, Inc. v. Wiederlight,208 Conn. 525, 535 n. 5 (1988). Accordingly, judgment is rendered for the Town of Cheshire on the grounds that no complaint is stated directly against it. The court finds no need to reach the merits of the complaint insofar as the Town of Cheshire is concerned. The matter is far more complicated when the court begins to consider the appeal as it pertains to the Cheshire Planning and Zoning Commission.
AGGRIEVEMENT
Before the court is able to entertain the merits of the plaintiff's case, the issue of aggrievement, which is a prerequisite to the court's exercise of jurisdiction in this or any other administrative appeal, must be met and satisfied. Walls v.Planning Zoning Commission, 176 Conn. 475, 479; Fletcher v.Planning Zoning Commission, 158 Conn. 497, 501.
Fletcher would appear to make it clear that when the appeal is from the denial of the request for a zone change statutory aggrievement does not exist. The defendant Commission argues that the plaintiff is aggrieved only if it can show classical aggrievement. The defendant, while not specifically commenting on statutory aggrievement, also seems to concede its obligation to establish classical aggrievement.
The defendant cites Goldfeld v. Planning Zoning Commission,3 Conn. App. 172 (1985) for the standard in determining whether an individual is aggrieved. In Goldfeld the Appellate Court held: CT Page 1882
 "First, the party claiming aggrievement must demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must establish that this specific, personal and legal interest has been specifically and injuriously affected by the decision."
Goldfeld at 175.
The plaintiff in its brief then concludes:
 "The Planning and Zoning Commission's decision specifically injured the plaintiff's specific, personal and legal interest in its property."
In its brief the plaintiff cites no evidence of the alleged injury. Neither did the plaintiff produce any evidence at trial which clearly supported the alleged injury. Admittedly, the plaintiff, through Mr. Banker, submitted evidence showing that the plaintiff was the continuous owner of the property involved.
The court has searched the record and transcript of the public hearing for evidence to support the plaintiff's assertion that it was specifically injured. The court is satisfied that there is sufficient evidence in the record, particularly in the testimony of Senator Robinson, to show a specific injury. Accordingly, the court finds that the plaintiff is aggrieved and has standing to bring the appeal against the Commission.
THE SUFFICIENCY OF THE RECORD TO DENY THE REQUESTED CHANGE
Our Supreme Court has held in Calandro v. Zoning Commission,167 Conn. 439, 440 (1979):
 "The present appeal, involving a decision upon an application for a zone change, required the trial court to review a decision made by the Commission in its legislative capacity. In such circumstances, it is not the function of the court to retry the case. Conclusions reached by the Commission must be upheld by CT Page 1883 the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of the issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached."
The Commission concluded its findings with the following conclusions:
 "(1) The original plan has not had a full opportunity to be developed, especially in view of the current economic situation. (2) We do not want to duplicate the strip development we now have on Route 10. Such mistakes cannot be corrected. (3) Zoning should not be piecemealed, changes should only be made after careful consideration of the impact of the total industrial and commercial area and on the total plan of development."
The court finds that these conclusions are supported by the lengthy transcript. While the court could quote testimony at length, the plaintiff's attacks on the Zoning Commission action are related more to conflict of interest and disqualification problems than to the sufficiency of the record. Suffice it to say that the court's research supports the conclusion stated on page 13 of the Commission's Brief of July 6, 1993 wherein it is stated:
 "Throughout the long history of zoning in this state, there is no Supreme Court decision or Appellate Court decision where the court has ever ruled that a local zoning commission was required to amend the zoning regulations in a particular fashion to permit a specific use of land without a showing that the present zoning classification of a particular parcel of land is confiscatory. It is submitted that no court has ever taken this action because to do so the court would be usurping the legislative function delegated by statute to the zoning commission." CT Page 1884
While the court is well aware that the granting of certain zone changes have been overturned as "spot zoning", it is the holding of the court that this record amply justifies the refusal to change the zone in accordance with the plaintiff's request.
DUE PROCESS AND EQUAL PROTECTION
In order to prevail on its claim of due process, the plaintiff must prove: (1) the property interest it asserts is cognizable under the due process clause; (2) it has been deprived of that property interest; and (3) the deprivation of the property interest has occurred without due process of law. Double I LimitedPartnership v. Planning Zoning Commission of the Town ofGlastonbury, 218 Conn. 65, 76 (1991). There simply is insufficient evidence in this record to show that the Planning and Zoning Commission deprived Crossroads of due process of law.
Likewise there is no evidence in the record to support the allegations that the Commission deprived Crossroads of equal protection of law. This application requesting the Commission to amend its regulations calls for the Commission to act in its legislative capacity, and in that capacity it has a wide and liberal discretion to determine what are the needs of the Town with reference to the use of real property located therein and to legislate in such a manner that these needs will be satisfied.
THE BRUNO DISQUALIFICATION
It is clear that Attorney Richard D. Bruno participated in a number of earlier decisions which affect the present status of the interchange zone in the Town of Cheshire. None of those earlier decisions are presently on appeal before this court and the question of the propriety of Attorney Bruno's participation in the earlier decisions is not before the court. In the present case, Attorney Bruno disqualified himself. Somewhat understandably, particularly for a practicing attorney, Attorney Bruno felt compelled to justify his previous actions and to deny his alleged conflict while voluntarily stepping down. At the time that he stepped down he made a lengthy statement which appears on page 2 of record number 64. In that statement, in addition to defending his earlier actions and claiming no conflict of interest, he does make some statements which are critical of the applicant.
Section 8-11 of the General Statutes provides in pertinent part: CT Page 1885
 ". . . . no member of any zoning commission or board and no member of any zoning board of appeals shall participate in a hearing or decision of the board of commission upon any matter in which he is directly or indirectly interested in a personal or financial sense. . . . ."
The court recognizes that a leading case in Connecticut on conflict of interest in zoning matters is Thorne v. Zoning Commission of OldSaybrook, 178 Conn. 198 (1979). In that case Mr. Thorne voted on the application. The court is not prepared to find that every member who steps down prior to the vote has failed to "participate". The court does hold that Mr. Bruno did not "participate" in the matter which is the subject of this appeal. Since the court finds that Mr. Bruno did not "participate", it finds no need to delve further into the question of whether or not he had a conflict of interest.
While the court intends no criticism of Attorney Bruno, and recognizes that statements such as his are not uncommon, it does appear that "participation" may occur as the result of actions which fall short of voting on an application. It would appear preferable that retiring members refrain from commenting on their reasons for stepping down and particularly refrain from commenting on the applicant or the application. The court is concerned that critical comments concerning a pending application, particularly if made by a commission chairman, might, in a different fact pattern, amount to participation requiring reversal.
THE DISQUALIFICATION OF COMMISSIONERS BRIMBERG, IRISH AND ORSINI
The court, which has considerable experience in dealing with land use matters, has seldom encountered a matter which reflects a longer or more intense struggle than the intersection zoning which is the subject matter of this lawsuit.
In apparent reaction to the charges and countercharges being exchanged, the Town of Cheshire retained Attorney Thomas Byrne as special counsel to the Cheshire Planning and Zoning Commission. In a somewhat unusual action, the Town further retained Attorney Daniel E. Casagrande as special counsel to the Town of Cheshire. We therefore face a situation where both the Town and the Commission were represented, each by separate counsel, in the CT Page 1886 request for zone change which is being reviewed by the court. Shortly before the public hearing on this matter, in a letter dated June 16, 1992, Attorney Casagrande wrote to the members of the Planning and Zoning Commission a letter recommending that three commission members disqualify themselves or be disqualified because of the "appearance of impropriety".
Ordinarily, zoning commission members judge for themselves their fitness to sit under § 8-11 of the General Statutes, which provides in pertinent part:
 ". . . . No member of any zoning commission or board and no member of any zoning board of appeals shall participate in the hearing or decision of the board of commission of which he is a member upon any matter in which he is directly or indirectly interested in a personal or financial sense. . . ."
Cheshire has a code of ordinances which in § 10-1(c)(1) defines personal interest broadly as "any interest which is incompatible with the proper discharge of one's official duties in the public interest or which would tend to impair one's independence or judgment or action in the performance of one's official duties." That ordinance goes on to provide in § (4):
 "Whenever any agency member is requested by another member to that agency, or by a party to the matter pending before the agency or by a member of the public who may be aggrieved by the decision of said agency, to abstain from participating in any hearing, discussion, debate or vote or any matter which is pending before said agency for the reason that he has a conflict of interest, and if said agency member refuses to so abstain, the remaining members shall consider any relevant evidence concerning said claim conflict of interest, as defined by this section, and vote on such requests for abstention as follows."
In his letter Attorney Casagrande asked the Zoning Commission to use the local ordinance to disqualify three members, David Orsini, Kenneth Irish and Tobey Brimberg. Two of the members were disqualified by commission vote and the third, although denying a CT Page 1887 conflict, withdrew voluntarily when it became clear that if he failed to do so he would be disqualified.
The claimed conflicts of interest were set forth in Attorney Casagrande's letter as follows:
 "David Orsini. Mr. Orsini is a former Republican Town Committee Chairman and is a political ally of Senator Robinson, the applicant's consultant. Mr. Orsini met on at least one occasion with Steven Banker, one of the applicant's principals at Senator Robinson's house. While Mr. Banker may or may not have discussed the specifics of the application during this meeting, he questioned Mr. Orsini about why some town officials in Mr. Banker's view appeared to be opposed to the project. Mr. Orsini also discussed with the current Republican Town Chairman the issue of whether the chairman should meet with Mr. Banker about the project at Senator Robinson's house. Mr. Orsini felt that the chairman should acquaint himself with the issues. Mr. Orsini also advised the chairman that he desired to appear before the nominating committee to discuss what he viewed as conflicts of interest that some candidates for the alternate positions on the commission may have had concerning the application.
 Kenneth Irish. Mr. Irish is also a political ally of Senator Robinson. A few weeks ago Mr. Irish announced his candidacy for the 103rd District Assembly Seat. He has sought Senator Robinson's advice and help in this regard and on at least one occasion he met with Senator Robinson at the capitol concerning his political prospects. In January 1992, Mr. Irish met with Mr. Robinson and Steven Banker at a Wallingford restaurant. Although Mr. Irish's proposing in going to the meeting was to talk to Senator Robinson about the political seat, Mr. Irish agreed to meet even when Senator Robinson told him the was having lunch with Mr. Banker. Although the conversation at CT Page 1888 this meeting apparently did not center on the specifics of the application, Mr. Irish and Mr. Banker did not talk in general about the use of the land in the interchange zone. Mr. Irish admitted to Mr. Banker that he thought more commercial activity in the zone was a good idea.
 Tobey Brimberg. Mr. Brimberg is a commercial real estate broker. His real estate firm, H. Pearce Company, has listings in the north end not far from the site of the applicant's proposed mall. The Town also has information Mr. Brimberg met on at least one occasion with Steven Banker. The meeting lasted a little less than one hour and they discussed the possible disqualification of other planning and zoning commission members who Mr. Banker thought might be opposed to the application."
Over the defendants' objections, the court allowed the plaintiff wide latitude to introduce additional evidence in the form of answers to interrogatories and portions of depositions taken in a separate proceeding between the same parties. That additional evidence may have tended to support the plaintiff's claim of conflict of interest on the part of Attorney Bruno. However, since the court has already ruled that in the court's opinion Attorney Bruno did not "participate" in this matter, the absence or presence of conflict on his part is immaterial to a decision of the matter. Additionally, the court recognizes that some of the evidence presented to it certainly confirms an unusual amount of political sound and fury on both sides of the present dispute. There is some evidence that Orsini, Irish and Brimberg may have been more favorable to the application to change zone than other members of the Commission. There are some legitimate questions raised, in the court's opinion, about the manner in which the conflict of interest ordinance was invoked in this case by special counsel for the Town. Finally, the conflict of interest claims against Mr. Orsini and Mr. Irish appear to be more political in nature then personal or financial in the normal sense.
In his letter of June 16, 1992, Attorney Casagrande, while challenging the three members, explicitly disavows any interest that the Town might have in the outcome of the underlying matter. CT Page 1889
There is absolutely no evidence that the three alternates who eventually sat on the matter and participated in the 8-0 vote to deny the zone change were in any manner prejudiced against the applicant or the application. Neither is there any convincing evidence that if the original members had sat, the vote would have been 5 to 3 against the application. Additionally, the court is at a loss to see how the applicant would have benefitted [benefited] from a 5-3 vote against his request rather than an 8-0 vote.
Finally, the court notes that while Attorney Casagrande's letter concerning disqualification is unusual at best, and ill advised at worst, Attorney Byrne representing the Commission was present throughout the consideration and deliberations in response to the letter. At no point did Attorney Byrne take exception to the letter or advise the Commission that anything in the letter was not in conformity with applicable law.
The court is aware that other litigation is pending between these parties which may explore in greater detail all of the facts and circumstances surrounding the ongoing dispute concerning the interchange zone in Cheshire. At the present time, this court faces limited issues in an administrative appeal. This court holds that the Commission had sufficient reasons to deny the request for a zone change. The applicant had the right to have no member participate in the deliberations who had a conflict of interest. The applicant's only claim of member conflict was directed against Attorney Bruno, whom the court has already ruled did not "participate". The applicant had a right to have a commission which was not prejudiced against the applicant. Even if one were to assume that the disqualified members might have been somewhat more sympathetic than the alternates who replaced them, there is no indication that the applicant did not have a fair hearing. In the absence of evidence and a finding that the alternates were prejudiced against the applicant, questions concerning the propriety of the members' replacement or the mechanics or standing to invoke the municipal conflict of interest ordinance are simply not essential to a decision of this matter.
For the foregoing reasons the decision of the Planning and Zoning Commission of the Town of Cheshire denying the proposed zone change is affirmed.
The court by, CT Page 1890
Kevin E. Booth, Judge